# APPELLANT'S OPENING BRIEF AND MOTION FOR STAY PENDING APPEAL

## UNITED STATES COURT OF APPEALS

## FOR THE NINTH CIRCUIT

---

**FYODOR KAPUSTIN** also known as **TED** also known as **FYODOR KAPUSTINE**,

*Defendant-Appellant*,

**DEJAVUAI, INC.,**

*Plaintiff-Appellee*.

---

**Appeal No. 25-7431**

**District Court Case No. 2:25-cv-00915-JNW**

**(W.D. Wash.)**

**The Honorable Jamal N. Whitehead, District Judge**

---

**APPELLANT'S OPENING BRIEF AND MOTION FOR STAY PENDING APPEAL**

---

**Page 1**

**FEDOR KAPOUSTINE**

*Pro Se Appellant*

Canadian Citizen, Currently Residing in Canada

(Address Withheld for Security Reasons)

Phone Number: +1(425)240-4627

Email Address: ted.kapustin@pm.me

## I. DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Appellant FEDOR KAPOUSTINE (incorrectly identified in court filings as "Fyodor Kapustin" and "Fyodor Kapustine") states that he is an individual proceeding pro se and has no parent corporation, subsidiary, or affiliate that has issued shares to the public. No publicly held corporation owns ten percent or more of any stock or interest in Appellant. Appellant is a citizen of Canada who currently resides in Canada.

## II. TABLE OF CONTENTS

**I. Disclosure Statement** …………………………………………. 2

**II. Table of Contents** …………………………………………… 2

**III. Table of Authorities** ……………………………………….. 4

**IV. Jurisdictional Statement** …………………………………….. 5

**V. Statement of Issues Presented for Review** …………………………. 6

**VI. Statement of Standard of Review** …………………………….. 7

**VII. Statement of the Case and Procedural History** …………………… 8

**VIII. Statement of Facts** ……………………………………… 11

**IX. Summary of Argument** …………………………………… 28

**X. Argument** ……………………………………………. 32

A. The District Court Committed Clear Error in Its Factual

    Findings Regarding Appellant's Employment Status ...................... 32

B. The District Court Applied the Wrong Legal Standard in

    Evaluating the Winter Factors ......................................... 39

C. The District Court's Order Violates Appellant's Constitutional

    Rights to Due Process and Free Speech ............................... 44

D. The District Court Failed to Properly Consider Controlling

    Immigration Law and USCIS Documentation ............................. 47

**XI. Motion for Stay Pending Appeal** ………………………………. 50

**XII. Conclusion** ……………………………………………… 57

**XIII. Certificate of Compliance with Type-Volume Limit** ……………… 60

**XIV. Certificate of Service** ……………………………………….. 61

## III. TABLE OF AUTHORITIES

**Cases**

Winter v. Natural Resources Defense Council, Inc., Supreme Court, 2008 …….. 7, 30, 36, 39, 50, 52

Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944) …….. 32, 37

Chambers v. NASCO, Inc., 501 U.S. 32 (1991) ……………………………….. 32, 37

Pope v. Federal Express Corp., 974 F.2d 982 (8th Cir. 1992) ……………. 32, 37

Aoude v. Mobil Oil Corp., 892 F.2d 1115 (1st Cir. 1989) ……………….. 38

**Statutes**

28 U.S.C. § 1292(a)(1) ……………………………………………….. 5

**Rules**

Federal Rules of Appellate Procedure Rule 3 ……………………………… 5

Federal Rules of Appellate Procedure Rule 8 ……………………………… 50

Federal Rules of Appellate Procedure Rule 28 ……………………………… 8, 32

Circuit Rule 27-2 ………………………………………………….. 50

Circuit Rule 27-3 ………………………………………………….. 50

**Regulations**

Change of Employer ……… 13, 47

O-1 Visa Regulations

---

## IV. JURISDICTIONAL STATEMENT

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(a)(1), which provides for appeals from interlocutory orders of district courts granting preliminary injunctions. The United States District Court for the Western District of Washington had subject matter jurisdiction over the underlying action pursuant to federal question jurisdiction and diversity jurisdiction.

On September 17, 2025, the Honorable Jamal N. Whitehead issued a preliminary injunction order in the case DejaVuAI, Inc. v. Kapustin, Case No. 2:25-cv-00915-JNW (Dkt. No. 69). Appellant timely filed his Notice of Appeal (Dkt. No. 77) on November 21, 2025 in accordance with Federal Rules of Appellate Procedure Rule 3, within the required thirty-day period following entry of the preliminary injunction order.

The preliminary injunction order is a final, appealable interlocutory order within the meaning of 28 U.S.C. § 1292(a)(1), as it grants injunctive relief that will remain in effect pending resolution of the underlying litigation. This appeal chal-

lenges both the substantive merits of the preliminary injunction and seeks a stay of the injunction pending resolution of this appeal.

---

## V. STATEMENT OF ISSUES PRESENTED FOR REVIEW

**1. Whether the district court committed clear error in its factual findings regarding Appellant's employment status when it failed to consider substantial documentary evidence, including USCIS Form I-129 and Form I-140 petitions filed under penalty of perjury by Johnny Kessler certifying Appellant's employment with 1st1 Technologies, LLP, and instead relied exclusively on allegedly false information provided by Plaintiff regarding Appellant's purported employment with DejaVuAI, Inc.**

**2. Whether the district court applied the wrong legal standard in evaluating the preliminary injunction factors established in Winter v. Natural Resources Defense Council, Inc., when it failed to properly analyze the likelihood of success on the merits, irreparable harm, balance of equities, and public interest based on the complete evidentiary record.**

**3. Whether the district court's preliminary injunction order violates Appellant's constitutional rights to due process and free speech by prohibiting him from working on his own proprietary software and advertising his services**

**based on factually erroneous findings regarding his employment relationship with Plaintiff.**

**4. Whether the district court failed to properly consider controlling federal immigration law and USCIS documentation requirements when determining Appellant's employment status, specifically the requirements under USCIS Policy Manual Volume 2, Part M, Section D regarding employer changes for O-1 visa holders.**

---

## VI. STATEMENT OF STANDARD OF REVIEW

This Court reviews a district court's decision to grant a preliminary injunction for abuse of discretion. However, the district court's factual findings underlying the preliminary injunction are reviewed for clear error, and questions of law are reviewed de novo.

The standard for granting a preliminary injunction requires the plaintiff to demonstrate: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest. Winter v. Natural Resources Defense Council, Inc., Supreme Court, 2008.

When reviewing challenges to factual findings as clearly erroneous under Federal Rules of Appellate Procedure Rule 28, this Court must determine whether the district court's findings are supported by substantial evidence in the record and whether the court's conclusions based on those findings represent a clear error in judgment.

For constitutional challenges involving due process and free speech violations, this Court applies de novo review to questions of law while reviewing factual determinations for clear error. The constitutional analysis requires strict scrutiny when fundamental rights are at stake.

## VII. STATEMENT OF THE CASE AND PROCEDURAL HISTORY

This case arises from Plaintiff DejaVuAI, Inc.'s attempt to obtain a preliminary injunction against Appellant FEDOR KAPOUSTINE (incorrectly identified in Plaintiff's filings as "Fyodor Kapustin") based on fundamentally flawed factual premises regarding Appellant's employment status and relationship with Plaintiff's company.

The underlying dispute centers on Plaintiff's claims that Appellant was employed by DejaVuAI, Inc. and allegedly violated various employment-related obligations. However, the evidentiary record demonstrates that Appellant was never employed by DejaVuAI, Inc., but rather was employed exclusively by 1st1 Technologies,

LLP, a separate legal entity, as evidenced by official USCIS documentation filed under penalty of perjury. Although the formal reason for filing this lawsuit was Appellant's alleged violation of his fiduciary duties as a director, subsequent motions—including the motion for preliminary injunction—reveal that the actual goal of this lawsuit is seizing Appellant's proprietary reverse image search technology, which is worth millions of dollars. All motions by Plaintiff in this court are centered around its alleged ownership of Appellant's source codes—source codes that Plaintiff has never had in its possession and that Appellant developed over nearly 20 years, long before DejaVuAI, Inc. even existed.

The procedural history reveals a troubling pattern of the district court's reliance on allegedly false information provided by Plaintiff while simultaneously ignoring substantial documentary evidence that directly contradicts Plaintiff's factual assertions. The preliminary injunction was granted based primarily on written submissions and affidavits, with most submissions by Plaintiff containing deliberately false information regarding Appellant's alleged employment by DejaVuAI, Inc.

Johnny Kessler, who served as CEO of both 1st1 Technologies, LLP and DejaVuAI, Inc., filed contradictory statements under penalty of perjury with USCIS certifying Appellant's employment with 1st1 Technologies, LLP, while simultaneously claiming in court filings that Appellant was employed by DejaVuAI,

Inc. This fundamental contradiction was not adequately addressed by the district court in its preliminary injunction analysis.

Appellant, who had been represented by counsel during the initial proceedings, was forced to proceed pro se after exhausting approximately $200,000 in legal defense costs. The district court granted the preliminary injunction on September 17, 2025, without proper consideration of the substantial evidence contradicting Plaintiff's employment claims.

The injunction has caused immediate and ongoing irreparable harm to Appellant, including unemployment since February 2025, loss of potential income exceeding $15,000 per month, and prohibition from working on his own proprietary software that Plaintiff has no legitimate claim to ownership over.

Significantly, although Plaintiff requested arbitration and arbitration was granted by the court, Plaintiff has not moved forward with either courtroom hearings or arbitration proceedings. Plaintiff has essentially stalled the lawsuit, taking no meaningful steps to resolve the underlying dispute on the merits. This deliberate delay reveals that Plaintiff's true objective is not to obtain a judicial determination of the parties' rights, but rather to use the preliminary injunction as a tool to buy time while continuing its unauthorized sales of Appellant's software. While Appellant remains enjoined from working on his own technology and earning a living, Plain-

tiff continues to profit from software that it has no legitimate right to sell. This abuse of the preliminary injunction process—obtaining emergency relief and then refusing to prosecute the case—demonstrates Plaintiff's bad faith and further supports reversal of the injunction.

## VIII. STATEMENT OF FACTS

### A. Appellant's Immigration Status and Employment Documentation

Appellant's correct legal name, as appears on all official identification documents, is FEDOR KAPOUSTINE. Appellant has never used the first name "Fyodor" or the last name "Kapustine". He uses the name "Ted Kapustin" only unofficially. All court filings by Plaintiff incorrectly identified Appellant using these erroneous names. Appellant is a citizen of Canada who resided in the United States on an O-1A visa. Appellant FEDOR KAPOUSTINE is a foreign national who obtained lawful work authorization in the United States through an O-1A visa petition (Dkt. No. 61 at 1-246) filed by his employer, 1st1 Technologies, LLP. The critical facts regarding Appellant's employment status are established through official USCIS documentation that was filed under penalty of perjury and approved by federal immigration authorities.

On March 1, 2023, USCIS approved Form I-129, an O-1A work visa petition filed by Johnny Kessler, CEO of 1st1 Technologies, LLP, on behalf of Appellant and issued an approval notice for the O-1A visa (Dkt. No.61 at 248-249). This visa specifically authorized Appellant to work exclusively as Chief Technology Officer (CTO) of 1st1 Technologies, LLP. The petition included a detailed description of Appellant's job duties (Dkt. No. 61 at 31-32) that explicitly did not include software development activities. Under federal immigration law, this O-1A visa authorization was valid only for the specific position, specific job duties, and specific employer listed in the approved petition.

Subsequently, on January 12, 2024, Johnny Kessler, in his capacity as CEO of 1st1 Technologies, LLP, filed an EB-1A immigration visa petition (Dkt. No. 61 at 250-567) on behalf of Appellant. In this petition, filed under penalty of perjury (Dkt. No. 61 at 268), Kessler certified that as of the filing date, Appellant was employed as CTO of 1st1 Technologies, LLP (Dkt. No. 61 at 274-276), This petition was also approved by USCIS, further confirming Appellant's employment relationship with 1st1 Technologies, LLP (Dkt. No. 61 at 569-570). According to USCIS Form I-140 (Dkt. No 61 at 263) included in the petition, the petitioner is 1st1 Tehnologies, LLP, and the IRS EIN (Employer Identification Number) is 851294804 (EIN assigned to 1st1 Technologies, LLP). The petition lists Appellant's job duties as CTO of 1st1 Technologie, LLP (Dkt. No. 61 at 276) that do not include software

development and writing code. According to this petition, Appellant is the owner of DejaVuAI reverse image search technology (Dkt. No. 61 at 272)

## B. The Absence of Valid Employment Authorization with DejaVuAI, Inc.

Despite Plaintiff's claims that Appellant was employed by DejaVuAI, Inc., the evidentiary record demonstrates that no valid employment relationship ever existed between Appellant and DejaVuAI, Inc. Under federal immigration law, specifically USCIS Policy Manual Volume 2, Part M, Section D regarding "Change of Employer" (https://www.uscis.gov/policy-manual/volume-2-part-m-chapter-9), any change in employer for an O-1 visa holder requires the new employer to file a new petition, obtain approval, and secure issuance of a new visa authorization.

The record establishes that DejaVuAI, Inc. never filed a new O-1 petition for Appellant, never received USCIS approval for any employment relationship with Appellant, and never obtained authorization for Appellant to work for DejaVuAI, Inc. Appellant's work authorization remained exclusively with 1st1 Technologies, LLP throughout the relevant time period.

Plaintiff's attempt to establish an employment relationship through an invalid "employment contract" and forged termination letter (Dkt. No. 11-6 at 2) fails to satisfy federal immigration law requirements. The invalid "employment contract" was part of Kessler's unsuccessful October 25, 2022 USCIS submission attempting to

**Page** 13

change the petitioner for Appellant's O-1A visa, but the petitioner was never changed, and Appellant's visa was issued and remained valid only for 1st1 Technologies, LLP. A different version of this invalid document forged by Johnny Kessler also appears in I-140 petition as a proof of Appellant's employment by 1st1 Technologies, LLP (Dkt. No. 61 at 365).

## C. Johnny Kessler's Contradictory Statements Under Penalty of Perjury

A critical aspect of this case involves the contradictory statements made by Johnny Kessler under penalty of perjury in different proceedings. As CEO of 1st1 Technologies, LLP, Kessler certified to USCIS in both the I-129 and I-140 petitions that Appellant was employed by 1st1 Technologies, LLP and that all information provided in these petitions was correct, true, and complete. These certifications were made in USCIS filings during June through December 2022, January 2023, and January 2024—all under penalty of perjury.

However, in his capacity as CEO of DejaVuAI, Inc., Kessler simultaneously claimed in court filings—also under oath—that Appellant was employed by DejaVuAI, Inc. This fundamental contradiction demonstrates the unreliable nature of Plaintiff's factual assertions and raises serious questions about the veracity of Plaintiff's claims. Kessler's contradictory sworn statements constitute multiple federal perjuries: he cannot have truthfully testified in both the USCIS proceedings

**Page** 14

and these court proceedings. The district court failed to address these perjuries or their implications for the credibility of Plaintiff's entire case.

Further evidence of these contradictions appears in Kessler's April 22, 2025 request to USCIS to revoke Appellant's O-1A visa (Dkt. No. 65-10 at 2). In this request, Kessler specifically named 1st1 Technologies, LLP as the petitioner, thereby confirming that the petitioner was never changed to DejaVuAI, Inc. and that Appellant's employment authorization remained exclusively with 1st1 Technologies, LLP. But at the same time he claims that Appellant was never employed by 1st1 Technologies, LLP but instead was employed by DejaVuAI, Inc. since September 1, 2022 (the date when DejaVuAI, Inc. was founded). He does not explain how Appellant was able to work in the US without work authorization at DejaVuAI, Inc., whose CEO was also CEO of 1st1 Technologies, LLP, since September 1, 2022. He also does not explain why he started paying salary to Appellant only after March 1, 2023 when his O-1A visa was issued for the position of CTO at 1st1 Technologies, LLP. In his preliminary injunction (Dkt. No 69 at 4). Johnny Kessler attached to this letter the approval notice, USCIS Form I-797, issued for Appellant's O-1A visa for working at 1st1 Technologies, LLP on March 1, 2023.

Judge Whitehead, as a proof of Appellant's work authorization for working at DejaVuAI, Inc, uses Kessler's false claim (Dkt. No. 47 ¶ 17) that he notified USCIS about change of petitioner in October 2025, and that this notification was "ac-

cepted" by USCIS. In reality, this was just an unsuccessful attempt to change the petitioner without filing a new I-129 petition, and the visa was issued for the original petitioning employer, 1st1 Technologies, LLP. The petitioner was not changed because the federal immigration law explicitly requires that a new O-1 petition must be filed when an employer is changed or even when job duties of an alien worker are changed.

## D. Expert Immigration Law Testimony Ignored by the District Court

The record includes a declaration by immigration attorney Michael A. Jacobson (Dkt. No. 58), who provided expert analysis regarding the immigration law requirements for employer changes and the significance of the USCIS documentation in this case. Attorney Jacobson's declaration explained the legal requirements under federal immigration law and the implications of the approved I-129 and I-140 petitions for determining Appellant's actual employment status. According to this declaration, the O-1A visa issued to Appellant was valid only for 1st1 Technologies, LLP, and did not allow him to be employed by any other legal entity, including direct subsidiaries of the employing petitioner, 1st1 Technologies, LLP. He also proves that DejaVuAI, Inc. could not be successor or assign of 1st1 Technologies, LLP.

**Page** 16

The district court failed to adequately consider this expert testimony and the controlling immigration law principles it explained. Instead, the court relied primarily on Plaintiff's unsupported assertions regarding an employment relationship that violated federal immigration law and lacked proper USCIS authorization. Moreover, in his preliminary injunction Judge Whitehead falsely claims (Dkt. No. 69 at 15) that Mr. Jacobson's declaration proves that [sic] "In the end, USCIS granted Kapoustine an O-1 visa with DejaVuAI as his employer", thus misrepresenting facts, which is generally considered a palpable and overriding error or a misapprehension of evidence, and serves as grounds for an appeal.

**E. The District Court's Factual Findings and Legal Errors**

Despite the substantial documentary evidence establishing Appellant's exclusive employment relationship with 1st1 Technologies, LLP, the district court made factual findings that directly contradicted the official USCIS documentation. The court accepted Plaintiff's claims regarding Appellant's employment with DejaVuAI, Inc. without adequately addressing the immigration law violations such an employment relationship would entail.

The court's preliminary injunction order prohibits Appellant from working on his own proprietary software and from advertising his services, based on the erroneous finding that Appellant was employed by DejaVuAI, Inc. These restrictions violate

Appellant's constitutional rights and cause ongoing irreparable harm while the underlying factual premise for the injunction is demonstrably false.

## F. The False Premises Underlying Plaintiff's Claims

The entire lawsuit is premised on two deliberately false claims: (1) that Appellant was employed by DejaVuAI, Inc., and (2) that DejaVuAI, Inc. owns Appellant's reverse image search technology. Neither of these claims is supported by the evidence, and both are contradicted by substantial documentary evidence in the record.

### 1. The Invalid PIIA Cannot Establish Employment or Technology Transfer

The district court incorrectly relied on a Proprietary Information and Invention Assignment Agreement ("PIIA") (Dkt. No. 11-5) that Appellant accidentally signed on June 13, 2023 (3.5 months after he started working as CTO of 1st1 Technologies, LLP) as the primary "proof" that Appellant's reverse image search technology was transferred or licensed to DejaVuAI, Inc. However, this PIIA is legally invalid and unenforceable because Appellant was never employed by DejaVuAI, Inc. A PIIA is a contract that can only be valid between an employer and employee. Since no valid employment relationship ever existed between Appellant and DejaVuAI, Inc.—as established by the official USCIS documentation filed under penalty of perjury—the PIIA lacks the foundational prerequisite for its validity.

**Page** 18

The invalidity of the PIIA is further demonstrated by the fact that Plaintiff's entire theory of the case depends on establishing an employment relationship that violated federal immigration law. DejaVuAI, Inc. never obtained the required USCIS authorization for Appellant to work for them, never filed a new O-1 petition, and never received approval for any employment relationship with Appellant. Accordingly, Judge Whitehead's reliance on the invalid PIIA as evidence of technology transfer or ownership rights is fundamentally erroneous.

*2. Timeline of Technology Development Predates DejaVuAI, Inc. by Years*

The evidentiary record establishes a timeline that directly contradicts Plaintiff's claims of technology ownership. Appellant developed his reverse image search technology over the course of almost 20 years, first publicly revealing this technology in 2018. In June 2020, Appellant and Johnny Kessler co-founded 1st1 Technologies, LLP specifically to commercialize and sell Appellant's pre-existing technology. This was more than two years before DejaVuAI, Inc. was even founded.

This timeline is critical because it demonstrates that Appellant's technology existed and was fully developed long before DejaVuAI, Inc. came into existence. Plaintiff's claim that this technology was developed as "work for pay" for DejaVuAI, Inc. is therefore factually impossible. Moreover, Appellant's job duties as CTO of 1st1 Technologies, LLP—as certified in the USCIS I-129 petition—explicitly did

**Page** 19

not include software development or writing code. The characterization by Plaintiff and Judge Whitehead of Appellant's technology development as "work for pay" for DejaVuAI, Inc. is demonstrably false.

*3. Documentary Evidence Establishes Appellant's Sole Ownership*

According to the 1st1 Technologies, LLP operating agreement (Dkt. No. 38-1 at 2, § A ¶ 1), Appellant is the inventor and sole owner of the reverse image search technology at issue. This operating agreement—a legally binding corporate document—directly contradicts Plaintiff's claims of ownership and demonstrates that the technology has always belonged to Appellant personally.

Appellant's exclusive ownership of the DejaVuAI reverse image search technology is further evidenced by petitions I-129 (Dkt. No. 61 at 29) and I-140 (Dkt. No. 61 at 272).

Plaintiff and Judge Whitehead also rely on a "License Agreement" (Dkt. 38-3) between 1st1 Technologies, LLP and DejaVuAI, Inc. as purported evidence of DejaVuAI's rights to the technology. However, a careful reading of this agreement reveals that it only grants DejaVuAI, Inc. the "DejaVuAI" trademark and some unspecified "software" based on an unspecified "algorithm". Critically, the "License Agreement" explicitly states that the DejaVuAI software and the DejaVuAI algorithm are owned only by 1st1 Technologies, LLP (Dkt. 38-3 at 3, ¶ 3). The agree-

ment does not actually grant a license to Appellant's specific reverse image search technology to DejaVuAI, Inc. Furthermore, Appellant never licensed his DejaVuAI software or DejaVuAI algorithm to 1st1 Technologies, LLP, so there was nothing for 1st1 Technologies, LLP to sub-license to DejaVuAI, Inc.

Based on the invalid PIIA (invalid because Appellant was never employed by DejaVuAI, Inc.) and the "License Agreement" that does not actually grant a license to Appellant's technology, Judge Whitehead incorrectly concluded that Appellant "misappropriated" his own source code. This conclusion is particularly absurd given that Plaintiff allegedly "owns" technology that it does not even possess, according to plaintiff's own complaint. One cannot misappropriate one's own property, and Plaintiff cannot claim ownership of technology it has never possessed and that predates its corporate existence by years.

Despite all the above, Judge Whitehead in his preliminary injunction falsely claims that Appellant's non-existing relationships with plaintiff were "work for hire" (Dkt. No. 69 at 4, 13), despite the fact that there were no such relationships, and that even Appellant's job duties as CTO of 1st1 Technologies, LLP (Dkt. No. 61 at ) did not include software development and writing code.

*4. Johnny Kessler's Multiple Federal Perjuries*

Johnny Kessler committed multiple federal perjuries in his court filings by claiming under oath that Appellant was employed by DejaVuAI, Inc. These sworn statements in court filings directly contradict Kessler's own USCIS filings made in June through December 2022, January 2023, and January 2024, in which Kessler—under penalty of perjury—certified that Appellant was employed by 1st1 Technologies, LLP, not DejaVuAI, Inc. Kessler cannot have truthfully testified in both proceedings; his contradictory statements under oath demonstrate that the employment claims made in this litigation are knowingly false.

*5. Plaintiff's Use of Incorrect Names in All Court Filings*

An additional indication of the carelessness and bad faith underlying Plaintiff's litigation is the consistent use of incorrect names for Appellant in all court filings. Appellant's correct legal name, as it appears on all official identification documents, is FEDOR KAPOUSTINE. Appellant has never used the first name "Fyodor" or the last names "Kapustine." Despite this, Plaintiff's filings and the district court's orders consistently refer to Appellant by these incorrect names. This pattern demonstrates Plaintiff's disregard for accuracy and basic due diligence in pursuing this litigation.

**Page** 22

*6. Appellant's Current Residence Outside United States Jurisdiction*

Appellant is a citizen of Canada who previously resided in the United States pursuant to an O-1A visa. In October 2025, Appellant left the United States and currently resides in Canada, outside the jurisdiction of the United States Federal Court. Appellant's contact information is limited to telephone and email for security reasons, as Appellant has legitimate concerns about safety given the nature of this litigation and the false accusations that have been made.

*7. Plaintiff's Blocking of Appellant's Email Account Predating DejaVuAI, Inc.*

Further evidence of Plaintiff's bad faith conduct is its blocking of Appellant's email account ted@dejavuai.com. The domain name dejavuai.com was registered by Appellant, Fedor Kapoustine, in the beginning of 2022, and still belongs to him to this day. This email account was opened by Appellant in April 2022—approximately six months before DejaVuAI, Inc. was even founded. Appellant used this email address for his job duties at 1st1 Technologies, LLP, which was doing business as "DejaVuAI" (Dkt. No. 43-1 at 12). After its forming in September 2022, DejaVuAI, Inc., being a partner of 1st1 Technologies, LLP., was allowed to use dejavuai.com domain name for its website www.dejavuai.com. After unilateral dissolution of 1st1 Technolgies, LLP by Johnny Kessler in October 2025, DejaVuAI, Inc. registered its own domain name, dejavuai.co, and uses it for its website

**Page** 23

www.dejavuai.co. However, Appellant's mailbox ted@dejavuai.com (which was migrated to dejavuai.co domain) remains blocked.

Johnny Kessler blocked Appellant's access to this email account after assuming the duties of mailbox administrator in September 2022. Kessler obtained administrative control by ordering the previous administrator, Sergei Agranovsky, to transfer administrative rights to Kessler. This blocking of Appellant's email account was a deliberate act to suppress evidence favorable to Appellant's case.

The blocked mailbox contains substantial evidence of Appellant's employment by 1st1 Technologies, LLP, including business communications, correspondence with clients and vendors, and with partners such as DejaVuAI, Inc., and internal company discussions—all of which would demonstrate that Appellant worked for 1st1 Technologies, LLP, not DejaVuAI, Inc. Additionally, the blocked mailbox contains receipts for equipment and services that Appellant purchased for 1st1 Technologies, LLP at his own expense, further corroborating Appellant's employment relationship with that entity. By blocking Appellant's access to this critical evidence, Plaintiff has engaged in spoliation of evidence and has interfered with Appellant's ability to defend himself in this litigation.

*8. Kessler's Deliberate Confusion of "DejaVuAI" (DBA) and "DejaVuAI, Inc."*
*(Separate Corporation)*

A critical element of Plaintiff's fraudulent scheme is Johnny Kessler's deliberate and systematic confusion between "DejaVuAI" as a trade name (DBA, or "doing business as") for 1st1 Technologies, LLP, and "DejaVuAI, Inc." as a separate and distinct corporate entity. These are fundamentally different legal concepts with different legal consequences.

A DBA (doing business as) is not a separate legal entity—it is merely a trade name under which an existing business operates. "DejaVuAI" was the trade name used by 1st1 Technologies, LLP  (Dkt. No. 43-1 at 11-12). In contrast, "DejaVuAI, Inc." is a separate corporation with its own distinct legal identity. These two entities have different ownership structures, different legal obligations, and different rights. An employment relationship with 1st1 Technologies, LLP (doing business as DejaVuAI) is legally distinct from an employment relationship with DejaVuAI, Inc.

Kessler deliberately exploited this confusion to mislead the court, USCIS, and other authorities. When it suited his purposes, Kessler conflated the two entities, using "DejaVuAI" and "DejaVuAI, Inc." interchangeably as if they were the same company. One of his favorite tricks was to introduce a short name "DejaVuAI" for DejaVuAI, Inc. in the beginning of a document, and then include in this document

**Page** 25

other documents pertaining to boith1st1 Technologies, LLP (DBA DejaVuAI) and DejaVuAI, Inc. He used this trick, for example, in his October 25, 2022 USCIS filing in which he unsuccessfully tried to change petitioner of Appellant's O-1A visa from 1st1 Technologies, LLP to DejaVuAI, Inc. In that fraudulent filing he also falsely stated that petitioner changed its name from "1st1 Technologies, LLP" to "DejaVuAI, Inc.", and that it changed EIN (Employer Identification Number). This deliberate obfuscation allowed Kessler to falsely claim that Appellant was "employed by DejaVuAI" (which was true, as a DBA of 1st1 Technologies, LLP) while simultaneously claiming Appellant was "employed by DejaVuAI, Inc." (which was false). The district court failed to recognize this critical distinction, which is fundamental to understanding why Plaintiff's employment claims are fraudulent.

Plaintiff deliberately confused USCIS by misrepresenting 1st1 Technologies, LLP and DejaVuAI, Inc. as the same company. In his USCIS filings, Kessler used the fraudulent designation "1st 1 Technologies, LLP (DBA DejaVuAI**, Inc.**)" instead of the correct legal designation "1st1 Technologies, LLP (DBA DejaVuAI)." A prominent example of this criminal misrepresentation is the I-140 petition (Dkt. No. 61 at 251, 272) This subtle but critical alteration—inserting "Inc." into the DBA name—was designed to deceive federal immigration authorities into believing that the two separate legal entities were one and the same. By doing so, Kessler

was able to submit documents pertaining to both 1st1 Technologies, LLP (DBA DejaVuAI) and DejaVuAI, Inc. in the same USCIS filing (Dkt. No. 61, at 351-363), creating a false paper trail that blurred the distinction between the two entities.

He also refers to DejaVuAI, Inc. as [sic] "formerly 1st1 Technologies, LLP" in a completely forged "employment agreement" between Appellant and DejaVuAI, Inc. (Dkt. No. 61 at 365) that Appellant never signed. He also provided forged W-2 forms and earning statements that he (who, in addition to duties of CEO of 1st1 Technologiesm LLP and CEO if DejaVuAI, Inc., performed duties of an accountant for both companies until late 2024) issued on behalf of DejaVuAI, Inc. (Dkt. No. 61 at 367-370) that were supposed to prove that 1st1 Technologies, LLP (which re misrepresented as the same company as DejaVuAI, Inc.) paid Appellant promised salary. But in his court filings, Kessler, who served as CEO of both 1st1 Technologies, LLP and DejaVuAI, Inc., used the same documents as evidence "proving" that appellant worked for DejaVuAI, Inc.

This fraudulent conflation of the two entities extended beyond USCIS filings. Plaintiff used the same deceptive tactic to illegally purchase software licensing tools from WIBU Systems USA after terminating Appellant's alleged employment by DejaVuAI, Inc. in February 2025. The licensing software was properly issued to 1st1 Technologies, LLP (DBA DejaVuAI), but by misrepresenting the corporate

identity, Plaintiff obtained this software for use by DejaVuAI, Inc.—a completely separate legal entity with no rights to the licensing tools. DejaVuAI, Inc. then used this illegally obtained licensing software to issue and sell user licenses to use Appellant's software to its customers, effectively conducting business using software licensing infrastructure that belonged to 1st1 Technologies, LLP that was known to WIBU Systems USA under its trade name DejaVuAI. This constitutes not only fraud but also violations of software licensing agreements and intellectual property laws.

---

## IX. SUMMARY OF ARGUMENT

The entire lawsuit is based on two deliberately false premises: (1) that Appellant was employed by DejaVuAI, Inc., and (2) that DejaVuAI, Inc. owns Appellant's reverse image search technology. Since the lawsuit is premised on deliberately false information, it should be dismissed with prejudice. The district court's preliminary injunction order must be reversed because it is based on clearly erroneous factual findings, applies the wrong legal standard, violates Appellant's constitutional rights, and ignores controlling federal immigration law. The court's decision

represents a fundamental miscarriage of justice that causes ongoing irreparable harm to Appellant while serving no legitimate legal purpose.

**First**, the district court committed clear error in its factual findings regarding Appellant's employment status. The court ignored substantial documentary evidence, including official USCIS Forms I-129 and I-140 filed under penalty of perjury by Johnny Kessler certifying Appellant's employment with 1st1 Technologies, LLP. Instead, the court relied exclusively on allegedly false information provided by Plaintiff regarding a purported employment relationship with DejaVuAI, Inc. that violated federal immigration law and lacked proper USCIS authorization. The court also disregarded expert testimony by immigration attorney Michael A. Jacobson explaining the legal significance of the USCIS documentation and the requirements for valid employer changes under federal immigration law. The court further erred by relying on an invalid Proprietary Information and Invention Assignment Agreement ("PIIA") that Appellant accidentally signed as "proof" of technology transfer, even though this PIIA is unenforceable because no valid employment relationship existed between Appellant and DejaVuAI, Inc. Additionally, according to the 1st1 Technologies, LLP operating agreement and I-129 and I-140 USCIS petitions, Appellant is the inventor and sole owner of the technology, and the "License Agreement" between 1st1 Technologies, LLP and DejaVuAI, Inc. does not actually grant any license to Appellant's specific reverse image search technology.

**Page** 29

**Second**, the district court applied the wrong legal standard in evaluating the preliminary injunction factors established in Winter v. Natural Resources Defense Council, Inc., Supreme Court, 2008. The court failed to properly analyze Plaintiff's likelihood of success on the merits given the fundamental flaws in Plaintiff's factual assertions regarding the employment relationship. The court also failed to require Plaintiff to provide any proof of irreparable damage—there were no cancelled sales contracts, and Plaintiff continued to sell Appellant's software without authorization, demonstrating the absence of actual irreparable harm. The court further failed to adequately consider the irreparable harm to Appellant, the balance of equities, and the public interest in enforcing federal immigration law and protecting constitutional rights.

**Third**, the district court's preliminary injunction order violates Appellant's constitutional rights to due process and free speech. The injunction prohibits Appellant from working on his own proprietary software and advertising his services based on factually erroneous findings. These restrictions constitute prior restraints on speech and deprive Appellant of property and liberty interests without due process of law. The constitutional violations are particularly egregious given that they are based on demonstrably false factual premises.

**Fourth**, the district court failed to properly consider controlling federal immigration law and USCIS documentation requirements. Under USCIS Policy Manual

Volume 2, Part M, Section D (https://www.uscis.gov/policy-manual/volume-2-part-m-chapter-9) , any change in employer for an O-1 visa holder requires specific procedures that were never followed in this case. The court's acceptance of an invalid employment relationship that violated federal immigration law demonstrates a fundamental misunderstanding of controlling legal principles. Moreover, Johnny Kessler committed multiple federal perjuries by claiming under oath in his court filings that Appellant was employed by DejaVuAI, Inc., which directly contradicts his own USCIS filings made in June through December 2022, January 2023, and January 2024, certifying that Appellant was employed by 1st1 Technologies, LLP.

**Fifth**, the lawsuit should be dismissed based on fraud on the court. Johnny Kessler committed multiple federal perjuries by making sworn statements in court filings claiming Appellant was employed by DejaVuAI, Inc., which directly contradict his sworn USCIS filings certifying Appellant's employment with 1st1 Technologies, LLP. Kessler deliberately confused the court by using "DejaVuAI" (a trade name for 1st1 Technologies, LLP) and "DejaVuAI, Inc." (a separate corporation) interchangeably to create a false impression of an employment relationship that never existed. Under established precedent including Chambers v. NASCO, Inc., 501 U.S. 32 (1991), Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), and Pope v. Federal Express Corp., 974 F.2d 982 (8th Cir. 1992), such deliberate fraud warrants dismissal of the action.

**Page** 31

The preliminary injunction should be reversed, and Appellant respectfully requests that this Court grant a stay of the injunction pending resolution of this appeal. Appellant has demonstrated a strong likelihood of success on the merits based on clear legal error and binding precedent. The ongoing harm to Appellant's constitutional rights and economic interests far outweighs any speculative harm to Plaintiff, and the public interest strongly favors protecting constitutional rights and enforcing federal immigration law.

---

## X. ARGUMENT

### A. The District Court Committed Clear Error in Its Factual Findings Regarding Appellant's Employment Status

The district court's factual findings regarding Appellant's employment status are clearly erroneous and must be reversed. Under Federal Rules of Appellate Procedure Rule 28, factual findings are clearly erroneous when they are not supported by substantial evidence in the record or when the reviewing court is left with the definite and firm conviction that a mistake has been committed.

*1. The District Court Ignored Substantial Documentary Evidence*

The most egregious error in the district court's analysis was its complete failure to consider substantial documentary evidence that directly contradicts Plaintiff's claims regarding Appellant's employment status. The record contains official US-CIS documentation that establishes, as a matter of federal law, Appellant's exclusive employment relationship with 1st1 Technologies, LLP.

Specifically, the court ignored USCIS Form I-129, the O-1A work visa petition filed by Johnny Kessler, CEO of 1st1 Technologies, LLP, on behalf of Appellant. This petition was approved by USCIS on March 1, 2023, and specifically authorized Appellant to work exclusively as Chief Technology Officer of 1st1 Technologies, LLP. The petition included a detailed description of Appellant's job duties that explicitly did not include software development activities. Under federal immigration law, this authorization was valid only for the specific position and employer listed in the approved petition.

The court also ignored USCIS Form I-140, the EB-1A immigration visa petition filed by Johnny Kessler on January 12, 2024, in which Kessler certified under penalty of perjury that as of the filing date, Appellant was employed as CTO of 1st1 Technologies, LLP. This petition was also approved by USCIS, providing ad-

ditional federal confirmation of Appellant's employment relationship with 1st1 Technologies, LLP.

These USCIS documents represent official federal determinations made under penalty of perjury and approved by federal immigration authorities. They constitute the highest quality evidence available regarding Appellant's employment status and legal work authorization. The district court's failure to consider this evidence, or to explain why it was disregarding federal immigration determinations, constitutes clear error.

## 2. The District Court Relied on Demonstrably False Information

Instead of considering the substantial documentary evidence establishing Appellant's employment with 1st1 Technologies, LLP, the district court relied primarily on information provided by Plaintiff that is demonstrably false and contradicts official federal documentation.

Plaintiff's claims regarding Appellant's employment with DejaVuAI, Inc. are contradicted by Johnny Kessler's own statements under penalty of perjury to USCIS. As CEO of 1st1 Technologies, LLP, Kessler certified to federal immigration authorities that Appellant was employed by 1st1 Technologies, LLP and that all information provided in the USCIS petitions was correct, true, and complete. These

certifications were made under penalty of perjury and carry the force of federal law.

The contradiction becomes even more apparent when considering Kessler's April 22, 2025 request to USCIS to revoke Appellant's O-1A visa. In this request, Kessler specifically named 1st1 Technologies, LLP as the petitioner, thereby confirming that the petitioner was never changed to DejaVuAI, Inc. This directly contradicts Plaintiff's claims that Appellant was employed by DejaVuAI, Inc.

The district court's reliance on this contradictory and false information, while ignoring official federal documentation, represents a clear error in factual determination that undermines the entire foundation of the preliminary injunction.

*3. The District Court Disregarded Expert Immigration Law Testimony*

The record includes written testimony by immigration attorney Michael A. Jacobson, who provided expert analysis regarding the immigration law requirements for employer changes and the significance of the USCIS documentation in this case. Attorney Jacobson's testimony explained the legal requirements under federal immigration law and the implications of the approved I-129 and I-140 petitions for determining Appellant's actual employment status.

This expert testimony was directly relevant to the central factual question in the case: whether Appellant was employed by DejaVuAI, Inc. or by 1st1 Technolo-

**Page 35**

gies, LLP. The immigration law expert's analysis of the USCIS documentation and federal requirements provided crucial context for understanding the legal significance of the documentary evidence.

The district court's failure to adequately consider this expert testimony, or to explain why it was disregarding the expert's analysis of controlling federal law, constitutes additional clear error in the court's factual determinations.

*4. The Factual Errors Undermine the Entire Preliminary Injunction Analysis*

The district court's clearly erroneous factual findings regarding Appellant's employment status are not harmless error. These factual determinations form the foundation of the entire preliminary injunction analysis under Winter v. Natural Resources Defense Council, Inc., Supreme Court, 2008. If Appellant was never employed by DejaVuAI, Inc., then Plaintiff's claims lack any factual basis, Plaintiff cannot demonstrate likelihood of success on the merits, and the preliminary injunction must be dissolved.

The magnitude of the factual errors and their central importance to the case require reversal of the preliminary injunction and remand with instructions to dismiss the underlying case based on Plaintiff's failure to establish the basic factual predicate for its claims.

**Page 36**

*5. The Lawsuit Should Be Dismissed Based on Fraud on the Court*

The deliberately false statements made by Plaintiff and Johnny Kessler in their court filings constitute fraud on the court, warranting dismissal of this action. Federal courts have inherent power to dismiss cases where parties have engaged in fraud that undermines the integrity of the judicial process. The Supreme Court in Chambers v. NASCO, Inc., 501 U.S. 32 (1991), affirmed that federal courts possess inherent power to impose sanctions, including dismissal, when parties have "practiced a fraud upon the court."

The seminal case of Hazel-Atlas Glass Co. v. Hartford-Empire Co., 322 U.S. 238 (1944), established that courts have "both the duty and the power" to vacate judgments obtained through fraud on the court. In that case, the Supreme Court held that a party's use of fabricated evidence to deceive the court warranted setting aside the judgment, even years after it was entered. The Court emphasized that the integrity of the judicial system must be protected from parties who would corrupt the truth-finding process through deception.

The Eighth Circuit in Pope v. Federal Express Corp., 974 F.2d 982 (8th Cir. 1992), affirmed dismissal as an appropriate sanction where a plaintiff "introduced manufactured evidence and perjured testimony in an attempt to enhance the case." The court found that the plaintiff "acted in bad faith and with improper purpose in a

**Page** 37

manner which jeopardizes the integrity of the judicial system." Similarly, in Aoude v. Mobil Oil Corp., 892 F.2d 1115 (1st Cir. 1989), the First Circuit affirmed dismissal where a party fabricated documentary evidence and made false representations to the court, finding it "hard to envision a clearer case of bad faith."

The present case presents an equally egregious pattern of fraud on the court. Johnny Kessler made sworn statements in court filings claiming that Appellant was employed by DejaVuAI, Inc.—statements that directly contradict his own sworn USCIS filings made in June through December 2022, January 2023, and January 2024, certifying that Appellant was employed by 1st1 Technologies, LLP. These contradictory sworn statements constitute perjury. Additionally, Kessler deliberately confused the court by using "DejaVuAI" (a DBA for 1st1 Technologies, LLP) and "DejaVuAI, Inc." (a separate corporation) interchangeably, creating a false impression of an employment relationship that never existed. The district court relied on these false representations in granting the preliminary injunction.

Because the entire lawsuit is premised on deliberately false claims—that Appellant was employed by DejaVuAI, Inc. and that DejaVuAI, Inc. owns Appellant's technology—the lawsuit should be dismissed with prejudice. The documentary evidence, including official USCIS records filed under penalty of perjury, directly contradicts Plaintiff's claims. Allowing this litigation to proceed based on know-

ingly false premises would reward fraud and undermine the integrity of the judicial system.

## B. The District Court Applied the Wrong Legal Standard in Evaluating the Winter Factors

The district court's preliminary injunction analysis fails to properly apply the legal standard established in Winter v. Natural Resources Defense Council, Inc., Supreme Court, 2008, which requires careful analysis of four factors: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the plaintiff's favor; and (4) that an injunction is in the public interest.

### 1. Failure to Properly Analyze Likelihood of Success on the Merits

The district court's analysis of Plaintiff's likelihood of success on the merits is fundamentally flawed because it is based on clearly erroneous factual findings regarding Appellant's employment status. As demonstrated above, the substantial evidence in the record establishes that Appellant was never employed by DejaVuAI, Inc., but rather was employed exclusively by 1st1 Technologies, LLP as evidenced by official USCIS documentation filed under penalty of perjury.

If Appellant was never employed by DejaVuAI, Inc., then Plaintiff's underlying claims necessarily fail as a matter of law. Plaintiff cannot demonstrate breach of

employment obligations, misappropriation of trade secrets, or violation of non-compete agreements if no employment relationship ever existed. The district court's failure to recognize this fundamental legal principle represents a misapplication of the Winter standard.

Moreover, the court failed to consider the legal implications of Plaintiff's claims under federal immigration law. Even if an employment relationship had existed between Appellant and DejaVuAI, Inc., such a relationship would have violated federal immigration law because DejaVuAI, Inc. never obtained proper USCIS authorization for Appellant's employment. Courts should not enforce agreements or relationships that violate federal law, and this principle should have been considered in the likelihood of success analysis.

*2. Inadequate Analysis of Irreparable Harm to Plaintiff*

The district court failed to properly analyze whether Plaintiff faces irreparable harm in the absence of preliminary relief. The court accepted Plaintiff's assertions of harm without adequately considering whether such harm is actually occurring or whether it is caused by Appellant's conduct.

Given that Appellant was never employed by DejaVuAI, Inc. and has no access to any legitimate trade secrets or confidential information belonging to Plaintiff, any claimed harm to Plaintiff is speculative at best. The court failed to require Plaintiff

**Page** 40

to demonstrate actual, ongoing harm that is directly attributable to Appellant's conduct and that cannot be remedied through monetary damages.

Furthermore, the court failed to consider that much of Plaintiff's claimed harm may be self-inflicted through Johnny Kessler's contradictory statements under penalty of perjury and his attempts to enforce an invalid employment relationship that violated federal immigration law.

Most critically, Plaintiff failed to provide any proof of irreparable damage suffered from Appellant's actions. There is no evidence in the record of any cancelled sales contracts, lost customers, or quantifiable business harm attributable to Appellant. To the contrary, the record demonstrates that Plaintiff continued to sell Appellant's software without Appellant's authorization even after the alleged "misappropriation." If Plaintiff was able to continue its business operations and software sales uninterrupted, it cannot credibly claim that it suffered irreparable harm requiring emergency injunctive relief. The district court's failure to require actual evidence of irreparable harm represents a fundamental misapplication of the Winter standard.

Plaintiff's own conduct further undermines any claim of irreparable harm. Although Plaintiff requested and was granted arbitration, Plaintiff has made no effort to move forward with either arbitration or courtroom hearings. Instead, Plaintiff

has stalled the litigation while using the preliminary injunction to maintain the status quo—a status quo in which Appellant is prohibited from working on his own technology while Plaintiff continues its unauthorized sales of Appellant's software. It's been almost a year since the lawsuit was filed on May 14, 2025. If Plaintiff were truly suffering irreparable harm, one would expect Plaintiff to prosecute this case vigorously and seek a prompt resolution. Plaintiff's deliberate delay demonstrates that the preliminary injunction serves not to prevent harm, but to perpetuate Plaintiff's ability to profit from technology it has no right to sell.

*3. Failure to Properly Balance the Equities*

The district court's analysis of the balance of equities is fundamentally skewed because it fails to consider the severe harm to Appellant caused by the preliminary injunction. The injunction prohibits Appellant from working on his own proprietary software and from advertising his services, causing immediate and ongoing economic harm.

Appellant has been unemployed since February 2025 as a direct result of Johnny Kessler's actions, losing approximately $15,000 per month in potential income. Appellant has also exhausted approximately $200,000 in savings and retirement funds defending against this lawsuit, forcing him to proceed pro se. The injunction

**Page** 42

prevents Appellant from pursuing his livelihood and working on software that he developed independently and that Plaintiff has no legitimate claim to.

The court failed to adequately weigh this substantial harm to Appellant against Plaintiff's speculative claims of harm based on a non-existent employment relationship. The balance of equities strongly favors Appellant, particularly given the constitutional implications of restricting his ability to work and speak about his own software.

*4. Misanalysis of the Public Interest*

The district court's analysis of the public interest factor is fundamentally flawed because it fails to consider the strong public interest in enforcing federal immigration law and protecting constitutional rights. The public has a significant interest in ensuring that employment relationships comply with federal immigration requirements and that individuals are not subjected to preliminary injunctions based on false factual premises.

The public interest also strongly favors protecting First Amendment rights and due process rights, particularly when preliminary injunctions impose prior restraints on speech and economic activity. The court failed to consider these important public policy considerations in its analysis.

Additionally, the public interest is served by ensuring that the judicial system is not used to enforce invalid agreements or relationships that violate federal law. Courts should not lend their authority to support claims based on employment relationships that never legally existed and that would have violated federal immigration law if they had existed.

## C. The District Court's Order Violates Appellant's Constitutional Rights to Due Process and Free Speech

The district court's preliminary injunction order violates Appellant's fundamental constitutional rights under the First and Fourteenth Amendments to the United States Constitution. These constitutional violations provide an independent basis for reversing the preliminary injunction and demonstrate the serious legal errors in the district court's analysis.

### 1. Violation of First Amendment Free Speech Rights

The preliminary injunction constitutes an impermissible prior restraint on Appellant's First Amendment right to free speech. The injunction prohibits Appellant from advertising his services and discussing his own proprietary software, which constitutes commercial speech protected by the First Amendment.

Prior restraints on speech are subject to strict constitutional scrutiny and are presumptively unconstitutional. The district court failed to apply the appropriate con-

stitutional analysis or to consider whether the injunction satisfies the demanding requirements for restricting protected speech.

The constitutional violation is particularly egregious because the speech restrictions are based on clearly erroneous factual findings regarding Appellant's employment status. The First Amendment does not permit courts to restrict speech based on false factual premises, especially when substantial evidence in the record contradicts those premises.

Moreover, the injunction restricts Appellant's ability to discuss and promote his own proprietary software that he developed independently. This software is Appellant's own intellectual property, and Plaintiff has no legitimate basis for claiming ownership or control over it. The restriction on Appellant's ability to discuss his own work constitutes a severe violation of his free speech rights.

*2. Violation of Fourteenth Amendment Due Process Rights*

The preliminary injunction violates Appellant's substantive and procedural due process rights under the Fourteenth Amendment. The injunction deprives Appellant of liberty and property interests without due process of law, based on clearly erroneous factual findings and inadequate legal analysis.

Appellant has a protected liberty interest in pursuing his chosen profession and working on his own proprietary software. The injunction interferes with this liberty

**Page** 45

interest by prohibiting Appellant from engaging in lawful economic activity and working on software that he owns and developed independently.

Appellant also has protected property interests in his own intellectual property and in his ability to earn a living through his professional skills. The injunction deprives Appellant of these property interests without adequate procedural safeguards or substantive justification.

The due process violation is compounded by the fact that the injunction is based on clearly erroneous factual findings regarding Appellant's employment status. Due process requires that government action be based on accurate factual determinations, and courts cannot deprive individuals of constitutional rights based on false or clearly erroneous factual premises.

*3. The Constitutional Violations Require Immediate Relief*

The ongoing violation of Appellant's constitutional rights constitutes irreparable harm that cannot be remedied through monetary damages. Constitutional violations are inherently irreparable and require immediate judicial intervention to prevent ongoing harm.

The district court failed to consider the constitutional implications of its preliminary injunction order and failed to apply the appropriate legal standards for restric-

tions on constitutional rights. This failure represents a fundamental error of law that requires reversal of the preliminary injunction.

The constitutional violations also support Appellant's request for a stay of the injunction pending appeal. The ongoing deprivation of constitutional rights while this appeal is pending causes irreparable harm that far outweighs any speculative harm to Plaintiff based on a non-existent employment relationship.

## D. The District Court Failed to Properly Consider Controlling Immigration Law and USCIS Documentation

The district court's preliminary injunction analysis demonstrates a fundamental misunderstanding of controlling federal immigration law and the legal significance of official USCIS documentation. This misunderstanding led to clearly erroneous factual findings and legal conclusions that require reversal.

*1. Requirements Under Federal Immigration Law for Employer Changes*

Under USCIS Policy Manual Volume 2, Part M, Section D regarding "Change of Employer" (https://www.uscis.gov/policy-manual/volume-2-part-m-chapter-9) , any change in employer for an O-1 visa holder requires specific procedures that were never followed in this case. The O-1 visa is employer-specific, meaning that USCIS-approved petition only authorizes the individual to work in the position specified in the petition filed by that specific employer. An O-1 visa holder cannot

**Page** 47

legally work for a different employer without that new employer filing a new Form I-129 petition with USCIS and receiving approval. The O-1 visa holder may not begin work for any new employer until the new petition is approved. This is not merely a procedural technicality—it is a fundamental requirement of federal immigration law that defines the legal scope of work authorization.

The record establishes that DejaVuAI, Inc. never filed a new O-1 petition for Appellant, never received USCIS approval for any employment relationship with Appellant, and never obtained authorization for Appellant to work for DejaVuAI, Inc. Under federal immigration law, any purported employment relationship between Appellant and DejaVuAI, Inc. would have been unlawful and invalid.

The district court failed to consider these controlling legal requirements or to analyze the implications of Plaintiff's claims under federal immigration law. Courts should not enforce agreements or relationships that violate federal law, and the court's failure to consider this principle represents a fundamental legal error.

*2. Legal Significance of Official USCIS Documentation*

The district court failed to recognize the legal significance of the official USCIS documentation in the record. The approved I-129 and I-140 petitions represent federal determinations made under penalty of perjury and approved by federal immi-

gration authorities. These documents establish, as a matter of federal law, Appellant's employment relationship with 1st1 Technologies, LLP.

Federal immigration determinations carry significant legal weight and cannot be disregarded without compelling justification. The district court provided no explanation for why it was ignoring these federal determinations or how Plaintiff's claims could be reconciled with the official USCIS documentation.

The court's failure to properly consider the USCIS documentation represents both a factual error (in failing to consider substantial evidence) and a legal error (in failing to recognize the controlling effect of federal immigration determinations).

*3. Contradiction Between Plaintiff's Claims and Federal Law*

The district court failed to address the fundamental contradiction between Plaintiff's claims and federal immigration law requirements. If Appellant had been employed by DejaVuAI, Inc. as Plaintiff claims, such employment would have violated federal immigration law because DejaVuAI, Inc. lacked proper work authorization for Appellant.

This contradiction should have led the court to question the veracity of Plaintiff's claims and to examine more carefully the substantial evidence establishing Appellant's lawful employment with 1st1 Technologies, LLP. Instead, the court accepted Plaintiff's claims without considering their implications under federal law.

**Page** 49

The court's failure to recognize and address this fundamental legal contradiction represents a significant error that undermines the entire foundation of the preliminary injunction.

---

## XI. MOTION FOR STAY PENDING APPEAL

Pursuant to Federal Rules of Appellate Procedure Rule 8 and Circuit Rules 27-2 and 27-3, Appellant respectfully moves this Court for a stay of the district court's preliminary injunction order pending resolution of this appeal. Appellant satisfies all requirements for a stay and faces irreparable harm from the continued enforcement of the constitutionally defective injunction.

### A. Standard for Stay Pending Appeal

The standard for granting a stay pending appeal mirrors the analysis for preliminary injunctions established in Winter v. Natural Resources Defense Council, Inc., Supreme Court, 2008. The movant must demonstrate: (1) a strong likelihood of success on the merits of the appeal; (2) irreparable injury if the stay is not granted; (3) that the balance of harms favors granting the stay; and (4) that a stay serves the public interest.

## B. Strong Likelihood of Success on the Merits

Appellant has demonstrated a strong likelihood of success on the merits of this appeal based on clear legal error and binding precedent. The district court's preliminary injunction order is based on clearly erroneous factual findings, misapplication of controlling legal standards, constitutional violations, and failure to consider controlling federal immigration law.

### 1. Clear Error in Factual Findings

As demonstrated above, the district court committed clear error in its factual findings regarding Appellant's employment status. The court ignored substantial documentary evidence, including official USCIS Forms I-129 and I-140 filed under penalty of perjury, and relied instead on demonstrably false information provided by Plaintiff. These factual errors are not supported by substantial evidence and leave this Court with a definite and firm conviction that a mistake has been committed.

### 2. Misapplication of Winter Standard

The district court misapplied the preliminary injunction standard established in Winter v. Natural Resources Defense Council, Inc., Supreme Court, 2008, by failing to properly analyze Plaintiff's likelihood of success on the merits given the fundamental flaws in Plaintiff's factual assertions. The court also failed to ade-

quately consider the severe harm to Appellant, the balance of equities, and the public interest in protecting constitutional rights and enforcing federal immigration law.

### 3. Constitutional Violations

The preliminary injunction violates Appellant's First Amendment right to free speech and Fourteenth Amendment right to due process. These constitutional violations provide an independent basis for reversal and demonstrate the serious legal errors in the district court's analysis.

### 4. Controlling Federal Immigration Law

The district court failed to properly consider controlling federal immigration law and the legal significance of official USCIS documentation. This failure led to legal conclusions that are inconsistent with federal law and binding precedent.

## C. Irreparable Injury if Stay is Not Granted

Appellant faces severe and irreparable injury if the stay is not granted. The ongoing enforcement of the preliminary injunction causes multiple forms of irreparable harm that cannot be remedied through monetary damages.

*1. Constitutional Violations*

The continued violation of Appellant's constitutional rights to free speech and due process constitutes irreparable harm per se. Constitutional violations cannot be remedied through monetary damages and require immediate judicial intervention.

*2. Economic Harm*

Appellant has been unemployed since February 2025 as a direct result of the actions that led to this litigation, losing approximately $15,000 per month in potential income. The preliminary injunction prevents Appellant from working on his own proprietary software and advertising his services, causing additional economic harm that compounds daily.

Appellant has already exhausted approximately $200,000 in savings and retirement funds defending against this lawsuit, forcing him to proceed pro se. The continued enforcement of the injunction prevents Appellant from pursuing income-generating activities that could help him recover from these financial losses.

### 3. Professional and Reputational Harm

The preliminary injunction prevents Appellant from working in his chosen profession and discussing his own proprietary software. This causes ongoing professional and reputational harm that cannot be quantified or remedied through monetary damages.

At nearly 59 years old, Appellant faces particular challenges in rebuilding his career and professional reputation if the injunction remains in effect during the pendency of this appeal. The longer the injunction remains in effect, the more difficult it becomes for Appellant to recover professionally.

### 4. Loss of Potential Income from Software Development

The injunction prohibits Appellant from working on and promoting his own proprietary software, causing potential losses of several million dollars per year in income. This software represents Appellant's own intellectual property that he developed independently, and Plaintiff has no legitimate claim to ownership or control over it.

## D. Balance of Harms Favors Granting the Stay

The balance of harms strongly favors granting a stay of the preliminary injunction. Appellant faces severe, ongoing, and irreparable harm from the continued enforcement of the injunction, while Plaintiff faces no legitimate harm from a stay.

### 1. Appellant's Substantial Harm

As detailed above, Appellant faces constitutional violations, economic harm, professional damage, and loss of potential income from the continued enforcement of the injunction. These harms are immediate, ongoing, and irreparable.

### 2. Plaintiff's Lack of Legitimate Harm

Plaintiff faces no legitimate harm from a stay of the preliminary injunction because Plaintiff's claims are based on a non-existent employment relationship. If Appellant was never employed by DejaVuAI, Inc., then Appellant cannot harm Plaintiff through breach of employment obligations or misappropriation of trade secrets.

Moreover, the injunction restricts Appellant's work on his own proprietary software that Plaintiff has no legitimate claim to. Allowing Appellant to work on his own intellectual property cannot harm Plaintiff's legitimate interests.

*3. Plaintiff's Claims Are Based on False Premises*

The preliminary injunction is based on clearly erroneous factual findings regarding Appellant's employment status. Plaintiff should not benefit from an injunction based on false factual premises while Appellant suffers irreparable harm from constitutional violations and economic damage.

**E. Public Interest Favors Granting the Stay**

The public interest strongly favors granting a stay of the preliminary injunction. The public has significant interests in protecting constitutional rights, enforcing federal immigration law, and ensuring that the judicial system is not used to enforce invalid claims based on false factual premises.

*1. Public Interest in Constitutional Rights*

The public has a strong interest in protecting First Amendment rights to free speech and Fourteenth Amendment rights to due process. These constitutional protections serve important public purposes and should not be violated based on clearly erroneous factual findings.

*2. Public Interest in Federal Immigration Law Compliance*

The public has a significant interest in ensuring that employment relationships comply with federal immigration law requirements. The preliminary injunction ef-

fectively enforces claims based on an employment relationship that would have violated federal immigration law, which is contrary to the public interest.

*3. Public Interest in Judicial Integrity*

The public interest is served by ensuring that courts do not enforce preliminary injunctions based on clearly erroneous factual findings and constitutional violations. The integrity of the judicial system depends on accurate factual determinations and proper application of legal standards.

## F. Request for Expedited Consideration

Given the ongoing irreparable harm to Appellant's constitutional rights and economic interests, Appellant respectfully requests expedited consideration of this motion for stay pending appeal. Each day that the preliminary injunction remains in effect causes additional irreparable harm that cannot be remedied through monetary damages.

## XII. CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court:

1. **Reverse** the district court's preliminary injunction order dated October 22, 2025;

2.   **Remand** the case with instructions to dismiss the underlying action for failure to establish the basic factual predicate for Plaintiff's claims;

3.   **Grant** Appellant's motion for a stay of the preliminary injunction pending resolution of this appeal;

4.   **Award** Appellant such other relief as this Court deems just and proper.

The district court's preliminary injunction order is based on clearly erroneous factual findings, misapplication of controlling legal standards, constitutional violations, and failure to consider controlling federal immigration law. These fundamental errors require reversal and demonstrate the need for immediate relief through a stay pending appeal. The entire lawsuit is premised on two deliberately false claims: (1) that Appellant was employed by DejaVuAI, Inc., and (2) that DejaVuAI, Inc. owns Appellant's reverse image search technology. The invalid PIIA cannot establish employment or technology transfer, and the "License Agreement" does not actually grant any license to Appellant's technology. Since the lawsuit is based on deliberately false information and fraudulent claims of ownership over technology that predates DejaVuAI, Inc.'s existence by years, it should be dismissed.

Appellant has demonstrated a strong likelihood of success on the merits based on clear legal error and binding precedent. The ongoing harm to Appellant's constitu-

tional rights and economic interests far outweighs any speculative harm to Plaintiff based on a non-existent employment relationship. The public interest strongly favors protecting constitutional rights and enforcing federal immigration law.

This case represents a fundamental miscarriage of justice that causes ongoing irreparable harm to Appellant while serving no legitimate legal purpose. The Court should reverse the preliminary injunction and grant the requested stay to prevent further constitutional violations and economic damage.

---

**Respectfully submitted,**

**s/FEDOR KAPOUSTINE**

*Pro Se Appellant*

Canadian Citizen, Currently Residing in Canada

(Address Withheld for Security Reasons)

Phone Number: +1(425)240-4627

Email Address: ted.kapustin@pm.me

---

**XIII. CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT**

**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** _____25-6431_____

I am the attorney or self-represented party.

**This brief contains ___10,359_____ words,** including _____0_____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ] it is a joint brief submitted by separately represented parties.

    [ ] a party or parties are filing a single brief in response to multiple briefs.

    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _____s/Fedor Kapoustine_____ **Date __April 22, 2026_____**

*(use "s/[typed name]" to sign electronically-filed documents)*

## XIV. CERTIFICATE OF SERVICE

*UNITED STATES COURT OF APPEALS*

**FOR THE NINTH CIRCUIT**

**Form 15. Certificate of Service for Electronic Filing**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** _____25-7431_____

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

[ ] I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

[ ] I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

**Description of Document(s)** *(required for all documents)***:**

Opening brief for appeal case 25-7431

Addendum

**Signature** ___s/Fedor Kapoustine_____ **Date** ___April 22, 2026 _____

*(use "*s/[typed name]*" to sign electronically-filed documents)*