**UNITED STATES COURT OF APPEALS**

**FOR THE NINTH CIRCUIT**

FEDOR KAPOUSTINE,

   Appellant,

                                  Appeal No. 25-7431

v.

DEJAVUAI, INC.,

   Appellee.

                                  **REPLY BRIEF OF**

                                  **APPELLANT**

                                **FEDOR KAPOUSTINE**

# Table of Contents

A. Legal Standard for Review.................................................................................4

B. Statement of facts.............................................................................................5

C. Purpose of this response..................................................................8

    1. Defendant's application for Adjustment of Status (AOS)............................9

    2. Written declaration by Halley Fisher French's attorney............................11

    3. Results of investigation of Halley Fisher French by Washington State Bar Association..............................................................12

D. The lawsuit is fraudulent and in bad faith...........................................14

E. The purposes of the preliminary injunction.........................................14

F. Crimes committed by plaintiff/appelle...............................................15

    1. Fraud on the U.S. Federal Court....................................................15

    2. Tax crimes and identity theft........................................................16

    3. Fraud on USCIS........................................................................17

    4. Falsely accusing the defendant of immigration crimes............................17

    5. Fraud on the U.S. Court of Appeals...............................................18

G. Lack of valid counter-arguments in response brief..............................18

H. Invalid evidence included in response brief........................................19

I. Possible motivations of the district court.................................................................19

J. Consequences of not reversing the decision of the district court........................21

K. The entire lawsuit should be dismissed.............................................................24

L. Exhibits................................................................................................24

## A. Legal Standard for Review

The Ninth Circuit reviews a district court's decision to grant a preliminary injunction for abuse of discretion. Under this standard, the appellant must demonstrate that the district court either applied an erroneous legal standard or made clearly erroneous factual findings. While the court gives some deference to the district court's discretionary judgment, it reviews legal conclusions de novo.

The Supreme Court established a four-factor test for preliminary injunctions. To obtain a preliminary injunction, a party must demonstrate: (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm in the absence of preliminary relief, (3) that the balance of equities tips in the movant's favor, and (4) that the preliminary injunction serves the public interest. All four factors must be satisfied; failure to establish even one factor requires denial of the preliminary injunction.

Reply briefs serve a limited function: to respond to arguments raised by the opposing party in the response brief. The appellant has not introduced new legal theories or evidence in this reply. As the Ninth Circuit has recognized, new arguments not raised in the opening brief are forfeited. The appellant's arguments in this reply brief are confined to responding to the appellee's contentions and

demonstrating why the district court's findings were erroneous under the governing legal standards. The apllellant also presents new inportand evidence that became available recently.

## B. Statement of facts

Kessler and the defendant formed 1st1 Technologies, LLP in June 2020. According to "1st1 Technologies, LLP Operating Agreement", the defendant is the sole owner of the reverse image search technology the company was formed around. This technology was never transferred or even licensed by the defendant to anyone.

In June 2022 1st1 Technologies, LLP filed a petition for O-1A work visa for the defendant.

DejaVuAI, Inc. was formed in September 2022 by 1st1 Technologies, LLP and Tim Tebow as a sales and marketing company for selling the defendant's software products. No assets of 1st1 Technologies, LLP were transferred to DejaVuAI, Inc., only a trademark (DejaVuAI) was licensed by 1st1 Technologies, LLP to DejaVuAI, Inc. Kessler became CEO and accountant of DejaVuAI, Inc., while simultaneously serving as CEO and accountant of 1st1 Technologies, LLP

On March 1, 2023, the defendant's O-1A visa was approved, and he started working as CTO of 1st1 Technologies, LLP. Software development and writing code were not part of his job duties.

On June 13, 2023, Kessler's lawyer at Kessler's request sent to defendant a digital envelope containing several organizational documents (shareholder agreements, etc.) related to DejaVuAI, Inc. that contained hundreds of pages, after which Kessler immediately called the defendant and asked him to sign the envelope "ASAP" (these documents required signatures of both directors of 1st1 Technologies, LLP). Kessler swore that "everything was fine" in the documents, and there was no need to read them, which would require several days. But buried in this envelope was a "Preliminary Information and Invention Assignment Agreement" (PIIA) that would be valid only if the defendant was employed by DejaVuAI, Inc. First time Kessler sent that PIIA to defendant in October 2022, but defendant did not sign it. Kessler's plan was to hire the defendant as the CTO of DejaVuAI, Inc. after the defendant became a lawful permanent resident of the United States, which would validate the PIIA. The defendant who trusted Kessler signed the digital envelope, which automatically signed the invalid PIIA contained in that envelope. The defendant never signed an offer letter with DejaVuAI. Inc. (the form of offer letter is contained in Dkt. 11-4 at 38-39) signing of which was

reequired to get employed by DejaVuAI, Inc., never obtained a work authorization for working at DejaVuAI, Inc. and was never employed by DejaVuAI, Inc., which makes this PIIA invalid.

It is obvious that theft of the defendant's technology was the primary goal of creating DejaVuAI, Inc.

In December 2024 DejaVuAI, Inc. was close to signing a recurrent contract with Apple, Inc. for $20-50 million/year, and was approached by representatives of Elon Musk and Peter Thiel regarding potential investments. In January 2025 Kessler announced that he found a C-series investor who was willing to buy 2% of DejaVuAI, Inc. for $5 million, which would immediately increase the valuation of DejaVuAI, Inc. to $250 million. Therefore, the value of the 5% stake that Kessler sold to his family in 2023 without permission for $100,000 would become $12.5 million.

When the defendant reminded Kessler that the defendant was the sole owner of his technology, and demanded that DejaVuAI, Inc. should buy back 5% of the company that Kessler sold in 2023 to his own family without permission for a fraction (about 1/5) of the price that he and the defendant previously agreed on, Kessler decided to get rid of the defendant and seize his billion-dollar technology using invalid and forged documents. The defendant was not in a hurry to apply for

Adjustment of Status and become a permanent resident of the U.S., and Kessler could not afford waiting another year to fulfill his plan to validate the PIIA, so he "fired" the defendant from DejaVuAI, Inc. where the defendant was never employed. He hired K&L Gates law to intimidate the defendant and tried to convince him that he was actually employed by DejaVuAI, Inc. and that PIIA was therefore valid. These bluffing and intimidation did not work, so in May 2025 Kessler decided to file a fraudulent lawsuit hoping that the defendant would agree to settle by surrendering his technology with all its source codes to plaintiff.

After realizing that the defendant is not going to surrender, plaintiff and K&L Gates decided to change their tactics by routing the lawsuit to arbitration and obtaining a preliminary injunction. The plaintiff who was granted arbitration knew that it had no chance to win the arbitration and the lawsuit, so it simply stalled the arbitration and the lawsuit and enjoyed the unlawful preliminary injunction by continuing to sell without authorization the defendant's software and misinforming potential investors about ownership of that software with the eventual goal to get new multi-million-dollar investments and embezzling them, like all previous investments.

Kessler unilaterally dissolved 1st1 Technologies, LLP in October 2025 (Ex. 6).

### C. Purpose of this response

The main purpose of this response to the appellee's response brief is presenting new important evidence that became available recently:

1. Defendant's approved application for Adjustment of Status

2. Written declaration by Halley Fisher French's attorney

3. Results of investigation of Halley Fisher French by Washington State Bar Association

### 1. Defendant's application for Adjustment of Status (AOS)

The defendant's I-140 petition for an immigration visa filed by his employer, 1st1 Technologies, LLP, was approved by USCIS in January 2024. But the defendant did not file an AOS application until July 10, 2025. After applying for AOS, he was not allowed to leave the US until it was approved, however, he decided to move to Canada because he ran out of funds and was not allowed to work in the US until his AOS or Employment Authorization Document (EAD) was approved, and a preliminary injunction prevented him from selling his own software in the US and even from working on it in the US. The defendant's departure from the US on October 26, 2025 should have automatically canceled his AOS, EAD, and advance parole (AP) applications that he filed in July and August 2025. But for

some reason, they were not canceled, and his EAD and AP application were approved in the beginning of February 2026 when he was already living in Canada. Immediately after that, on February 09, 2026, he submitted a request to USCIS to cancel his AOS application (Ex. 2). Despite the request to cancel the AOS application, the application was approved on March 05, 2026.

On July 31, 2026 the defendant sent a Freedom of Information Act (FOIA) request to USCIS requesting all the documents submitted to USCIS related to his O-1A and EB-1A visas. The response from USCIS received by the defendant on October 04, 2025 included the defendant's redacted AOS application filed on July 10, 2025 that was verified and accepted by USCIS (Ex. 1). The AOS application listed 1st1 Technologies, LLP as his only employer since March 01, 2023 (the date of approval of his O-1A visa filed by 1st1 Technologies, LLP) through May 12, 2025 (the date when that visa was revoked at the request of the original petitioner, 1st1 Technologies, LLP) (Ex. 1 at 15, or page 13 of the original document). There could be no other employers because the defendant's O-1A visa was issued only for 1st1 Technologies, LLP. 1st1 Technologies, LLP is also listed as the only petitioner for the appellant's O-1A non-immigrant worker visa (Ex. 1 at 18, or page 16 of the original document). 1st1 Technologies, LLP is also listed as the only petitioner for

the appellant's EB-1A immigration visa (Ex. 1 at 26, or page 24 of the original document)

The AOS application listing 1st1 Technologies, LLP as defendant's employer was verified and accepted by USCIS in July 2025. The fact that the AOS application was eventually approved in March 2026, and the defendant was granted a lawful US permanent resident status, only confirms that the defendant's employment was at 1st1 Technologies, LLP. If an employer other than 1st1 Technologies, LLP was listed as the defendant's employer on the O-1A visa, the AOS application would have been rejected.

## 2. Written declaration by Halley Fisher French's attorney

In Febuary 2026 the defendant filed a grievance against the immigration attorney Halley Fisher French who was helping 1st1 Technologies, LLP in 2022-2024 with applying for the defendant's O-1A work visa and EB-1A immigration visa. The defendant accused Ms. Fisher of conspiring with CEO of DejaVuAI, Inc., Johnny Kessler to defraud USCIS by misrepresenting 1st1 Technologies, LLP and DejaVuAI, Inc. as the same company in the October 25, 2022 USCIS filing with the goal to change the petitioner from 1st1 Technologies, LLP to DejaVuAI, Inc. The defendant also accused Ms. Fisher of forging the invalid "Employment contract" that that bore the defendant's signature (that was before that already

forged by Johnny Kessler), which may have constituted a federal crime of forgery by Ms. Fisher French.

In this declaration, Ms. Fisher's attorney argues that Kessler convinced Ms. Fisher that 1st1 Technologies, LLP and DejaVuAI, Inc. were the same company, and that 1st1 Technologies, LLP simply changed its name and employer identification number (EIN), and that Ms. Fisher did not conspire with Kessler and therefore did not commit a crime because she truly believed Kessler that this was a mere change of the name and EIN of 1st1 Technologies, LLP.

In October 2022 Kessler tried to change the petitioner of the defendant's O-1A visa from 1st1 Technologies, LLP to DejaVuAI, Inc. secretly from the defendant. Changing the petitioner would allow Kessler to hire the defendant as CTO of DejaVuAI, Inc., which would enable the PIIA (which was not signed yet by the defendant at that time, but Kessler thought that it was already signed). Kessler was sure that enabling the PIIA would allow DejaVuAI, Inc. to claim ownership of the defendant's technology (which would not be the case because even if the PIIA were valid because it would only grant a license to executables, and only for the period of the defendant's employment by DejaVuAI, Inc.). This was a premediated attempt by Kessler to steal the defendant's billion-dollar reverse image search technology.

Page 12 of 26

### 3. Results of investigation of Halley Fisher French by Washington State Bar Association

Washington State Bar Association dismissed the defendant's accusations of Ms. Fisher French – apparently, as protection of one of their colleagues who "made a small mistake" and did not deserve her career to be ruined as a result of that mistake. But the conclusion of the Bar Association contains several important facts:

1. All USCIS submissions made by Ms. Fisher on behalf of the defendant and Johnny Kessler were related only to the original petitioner, 1st1 Technologies, LLP. DejaVuAI, Inc. was never a petitioner of any of the defendant's visas. And for this reason, DejaVuAI, Inc. could not be a legal employer of the defendant.

2. Ms. Fisher French was confused by Kessler who intentionally misrepresented 1st1 Technologies, LLP and DejaVuAI, Inc. as the same company.

3. Ms. Fisher did forge the "Employment contract" by adding a paragraph to it saying that the defendant agrees to be paid a $60,000/year salary instead of $150,000/year. But she did it at the request of Kessler who represented the petitioner, so this forgery does not constitute a crime (which is ridiculous

Page 13 of 26

because this forged document also bore the defendant's signature, and forging a document that already bears a signature without the signatory's consent is a crime in the US).

## D. The lawsuit is fraudulent and in bad faith

This entire lawsuit is an unprecedented fraud on the U.S. federal court.

The lawsuit was never about the defendant's/appellant's alleged violation of fiduciary duties of a director. From the outset, the lawsuit centered around ownership of the defendant's technology. The main goal of the lawsuit was legalized appropriation/theft by the plaintiff of the unique and powerful dual-use technology created by the defendant over two decades and that has a market value around $1 billion.

## E. The purposes of the preliminary injunction

There are three main purposes of the preliminary injunction:

1. Establishing the "fact" that DejaVuAI, Inc. is the owner of the defendant's technology without court hearings – just by a deliberate decision of the judge based on forged and invalid documents and false claims presented by the plaintiff

2. Eliminating the defendant as a competitor

3. Eliminating hurdles in securing new investments that DejaVuAI, Inc. was going to embezzle (because it is unable to develop its own software products that can compete with the defendant's software products) by silencing the defendant (banning his social network accounts, obliging social networks to delete the defendant's posts, blocking the defendant's websites, etc.)

After obtaining the preliminary injunction, the plaintiff continued unauthorized sales of the executable files stolen from the defendant in 2024 and using the preliminary injunction as a "proof" of the plaintiff's ownership of the defendant's technology. The plaintiff used spectacular demonstrations of the executables stolen from the defendant and figures from sales of these executables as a proof of the plaintiff's ability to create such software and generate profit by selling it, and tried to secure multi-million investment to "further develop and improve" this technology for which the plaintiff does not even have the source code, according to the plaintiff's own court filings, and has no idea how it works.

## F. Crimes committed by plaintiff/appelle

### 1. Fraud on the U.S. Federal Court

As was shown by the appellant in his opening brief, Kessler who acted as the plaintiff committed several federal perjuries by claiming under oath in his court filings that the defendant was employed by DejaVuAI, Inc. He provided forged and invalid documents as "evidence" supporting his false claims. These claims directly contradicted Kessler's own statements made in I-129 (in June 2022-January 2023) and I-140 (in January 2024) petitions where he stated under oath that 1st1 Technologies, LLP was the defendant's only employer.

### 2. Tax crimes and identity theft

In 2024 and 2025 Kessler submitted to IRS forged tax forms and provided forged W-2 forms to the defendant.

By submitting forged W-2 forms to IRS, plaintiff committed several crimes. First of all, a tax crime (because defendant was employed by 1st1 Technologies, LLP, and was never employed by DejaVuAI, Inc.). Second, identity theft: Kessler, who served as CEO and accountant (until late 2024) of both 1st1 Technologies, LLP and DejaVuAI, Inc., had access to the defendant's personal information such as social insurance number (SIN), address, date of birth, etc. and used them to forge

tax documents related to DejaVuAI, Inc. He used all this information that was at his disposal to forge tax documents related to DejaVuAI, Inc. where the defendant never worked.

Despite multiple requests by the defendant, the plaintiff refused to provide the correct W-2 forms to the defendant, so the defendant was unable to file his tax returns. In March 2025 the defendant informed IRS about this, and IRS requested the defendant's W-2 forms from 1st1 Technologies, LLP. In their response, 1st1 Technologies, LLP falsely informed IRS that the defendant was never employed by 1st1 Technologies, LLP.

### 3. Fraud on USCIS

The plaintiff also included forged W-2 forms and a forged employment contract in the I-140 petition filed with USCIS in January 2024, as was already mentioned in the appellant's opening brief. This constitute the crimes of federal perjury and federal forgery committed by Kessler who certified under oath that all the information provided in the I-140 petition was true, correct, and complete.

### 4. Falsely accusing the defendant of immigration crimes

Also, by claiming that the defendant was employed by DejaVuAI, Inc. rather than by 1st1 Technologies, LLP, plaintiff accuses the defendant of conspiring with the

plaintiff to commit immigration crimes such as working in the US without authorization. These claims have no base because the defendant had absolutely no motivation or incentives to work illegally in the US. He has worked many times in the US by a TN1 visas since May 2005 and never overstayed his visas, let alone working illegally. The defendant was well aware of consequences of working in the US without authorization such as deportation and a lifetime ban from obtaining such an authorization, and a 5-year ban from visiting the US. He started working as CTO of 1st1 Technologies, LLP only after his O-1A work visa was approved on March 01, 2023, and never performed duties not listed in the I-129 petition such as software development and writing code. But according to the plaintiff's false claims, the defendant started working as a software developer at DejaVuAI, Inc. on September 01, 2022, and continued doing so until he was "fired" by the plaintiff from DejaVuAI, Inc. where the defendant never worked on February 11, 2025. These plaintiff's actions constitute federal perjury.

### 5. Fraud on the U.S. Court of Appeals

In its response brief, the appellee continued repeating under oath false claims regarding the appellant's alleged employment by DejaVuAI, Inc., and that the defendant's technology was created as "work for hire", thus committing fraud on the US Court of Appeals, which constitutes a federal crime.

## G. Lack of valid counter-arguments in response brief

In its response brief, the appellee failed to present counter-arguments that would invalidate or destroy the appellant's arguments presented in his opening brief. The appellee uses a faulty logic that can be summarized as: "This appellant's argument is invalid because the district court decided otherwise in its preliminary injunction". But the appellant's arguments prove that the district court's decision was unlawful, so using the district court's decisions to oppose the appellant's arguments simply makes no sense.

## H. Invalid evidence included in response brief

The appellee included in its response brief invalid evidence – screenshots of LinkedIn posts and emails that the plaintiff included in its motion filed in April 2026 asking the district court to impose sanctions on the defendant for his alleged violations of the preliminary injunction. This "evidence", in addition to being new, does not prove that the injunction was justified, only tries to prove that the defendant violated the preliminary injunction, and therefore should be stricken or ignored. This appeal is about whether the injunction itself was imposed in error, not about whether it was violated.

## I. Possible motivations of the district court

Apparently, Judge Whitehead did not base his preliminary injunction on the law. The proof of this was presented by appellant in the opening brief. Here are some of Judge Whitehead's possible motives:

1.  Judge Whitehead truly believed the constantly changing false narrative presented by the plaintiff that was so convincing that the judge did not even care to check the immigration law and other laws, and ignored apparent discrepancies and contradictions between the immigration documents and the plaintiff's statements made under oath in those documents and the plaintiff's false claims made in court filings, also under oath. This is very unlikely because Judge Whitehead has decades of experience in law, so he could not be easily fooled by a scammer like Kessler.

2.  A sincere desire to help a Washington State and American corporation in its legal battle against a "rogue alien". The plaintiff's complaint may have convinced the judge that the defendant would "destroy" DejaVuAI, Inc. if the court does not "protect" it. So, Judge Whitehead decided to help the plaintiff save the company by committing a "small injustice" that was justified by the benefit to the state and the country.

3.  A "patriotic" desire to seize a powerful dual-use technology from a "hostile alien" and keep it in the United States. Again, Judge Whitehead may have decided to help the country by committing "a little injustice" justified by potential benefits to the country.

4.  Judge Whitehead may have received a request from Washington, DC where most of DejaVuAI, Inc.'s customers – U.S. government agencies such as FBI, DHS, DoJ, and others – are located to help the plaintiff who provided an important technology to them that they rely on. This is the most likely motive because 2) and 3) would not help seize the technology from the defendant who could simply move to Canada where there are zero chances that a Canadian court will enforce an unlawful decision of the US federal court that violates US laws, and Judge Whitehead could not fail to realize that. So, he decided to fulfill the request in order to avoid negative consequences for himself and to earn gratitude.

The fact that Judge Whitehead openly sided with the plaintiff, while demonstrating a flagrant disregard for the law, suggests that this preliminary injunction is not a mistake or miscarriage of justice, but a deliberate decision. To justify the preliminary injunction, he pretended that he believed the forged and invalid documents and the false claims that the plaintiff presented.

## J. Consequences of not reversing the decision of the district court

If the unlawful preliminary injunction is not reversed, the appellate court's decision will set a dangerous precedent that will encourage fraudsters like Kessler to commit fraud on US federal agencies, the US Federal Court and the US Court of Appeals, and to commit perjuries and forgeries, and to use the US federal court as a vehicle for theft of intellectual property and other crimes. It will also encourage biased and corrupt judges who already enjoy immunity to make unlawful decisions and remain unpunished for making such decisions.

The only reason the appellate court will not overturn the district court's decision will be out of professional courtesy/solidarity and to protect one of their own – the federal judge that made that unlawful decision, which will favor profession's interests over public interest.

Not reversing the preliminary injunction will not help the plaintiff seize the defendant's technology. It will also not help the plaintiff to continue selling the defendant's software and secure new investments because many of DejaVuAI, Inc.'s customers and potential investors are already aware of the fact that DejaVuAI, Inc. does not possess the source codes of this technology and will never

get them, and does not even know how the algorithms that software is based on work, and that the executables that DejaVuAI, Inc. sells without the defendant's authorization contain multiple bugs and security vulnerabilities that cannot be fixed by DejaVuAI, Inc. (because it does not have the source codes). They also understand that the DejaVuAI, Inc. is not capable of creating its own software products that could be sold.

Failure to reverse the preliminary injunction will not help hold the defendant's powerful dual-use technology in the United States. On the contrary, it will force the defendant, who has already obtained a U.S. permanent resident status after moving out of the US, to remain outside the United States for fear that his computers and source code will be seized by U.S. law enforcement based on unlawful district court orders. He could also be fined and jailed for allegedly violating this unlawful preliminary injunction, according to the district court's decision. Appellant's U.S. permanent resident status ("Green Card") will be automatically canceled on September 05, 2026, after 6 months of not moving to the US since obtaining the Green Card. The appellant may also relinquish his U.S. permanent resident status at any time because this status does not provide any benefit to him and may only harm him if the preliminary injunction stays.

Keeping the preliminary injunction will result in many potential US customers, including US government agencies and defense technology companies, not getting the software products created by the appellant. Moreover, in order to make living, the appellant who was deprived of a possibility to work and do business in the US will be forced to sell his software products or his entire dual-use technology to the US adversaries like China and Russia.

Finally, if the district court's unlawful decision is not overturned, this entire story will eventually end up in the press, on television, and on social media, which could significantly damage the reputation of the US federal court, the US Court of Appeals and the entire US judicial system.

And of course, if the unlawful preliminary injunction is not overturned by the U.S. Court of Appeals, the appellant will appeal that decision to the U.S. Supreme Court.

## K. The entire lawsuit should be dismissed

The U.S. Court of Appeals has the ultimate power to dismiss this fraudulent federal lawsuit with prejudice. It also has the power to refer Kessler to law enforcement for numerous federal perjuries and federal forgeries that he committed.

## L. Exhibits

1.  A redacted copy of defendant's Adjustment of Status application received from USCIS

2.  Appellant's request to USCIS to cancel his AOS application sent on February 09. 2026

3.  Approval notice for appellant's AOS application

4.  Declaration by Halley Fisher French's attorney

5.  Dismissal letter from Washington State Bar Association

6.  A record from Washington Secretary of State database that proves that 1st1 Technologies, LLP was dissolved by Kessler in October 2025

Respectfully submitted,

/s Fedor Kapoustine

Dated: June 11, 2026

_____

FEDOR KAPOUSTINE

Appellant, Pro Se

(address withheld for security reasons)

Phone: (425)240-4627

email: ted.kapustin@pm.me